# Caleb N. Taylor's Appeal.

A trustee is not a competent witness as to matters between himself and a deceased *cestui que trust*, but is competent to testify as to matters between himself and living *cestuis que trustent*.

A trustee under a deed of trust holds the legal title to the trust estate; and the same is sufficient pledge to him for all legitimate advances within the terms of the trust.

Such a trustee is entitled to credit for all advances shown to have

been made within the powers conferred upon him by the deed; but not for advances which competent testimony fails to show were within such powers.

(Argued March 30, 1887. Decided October 3, 1887.)

January Term, 1887, No. 157, E. D., before Mercur, Ch. J., Trunkey, Sterrett, Green, and Clark, JJ. Appeal from a decree of Common Pleas No. 1 of Philadelphia County sustaining the exceptions of the complainants to the report of a master and ordering a conveyance by the defendant to the complainants. Reversed.

This was a bill in equity, wherein Louisa M. Joyce and others, widow and children of Anthony K. Joyce, were complainants, and Caleb N. Taylor was defendant, to compel a conveyance by defendant of the title to certain real estate and an account of the rents of the same. An answer was filed with an account showing a large balance due to defendant. The matter was referred to an examiner and subsequently to a master who found, *inter alia,* the following facts:

This bill was filed by the widow and children of Anthony K. Joyce, to compel the conveyance of the legal title of certain real estate held by the defendant, Caleb N. Taylor, as trustee, under a deed made by Anthony K. Joyce and Louisa M., his wife, and for an account of the collections and disbursements of the rents since the death of Anthony K. Joyce. In 1849 Anthony K. Joyce, then a young man of twenty-three, being in embarrassed circumstances, and harassed by importunate creditors, together with his wife, Louisa M. Joyce, executed a deed of trust, dated June 21, 1849, granting and conveying all their real estate and personal property to the defendant, Caleb N. Taylor, in trust to pay their debts, and afterwards to collect the rents, issues, and income, and apply the same to the support and maintenance of the grantors, during all the term of their lives, and in case the income should prove insufficient to supply the wants and necessities of Anthony K. Joyce and Louisa M., to sell or mortgage, as occasion may arise, all or any portion of the real estate, provided that the said Anthony K. Joyce or Louisa M., his wife, shall have no power to sell or encumber any of said real estate; nor shall any part of the same, or the income of the same, be liable in any way for any of the debts, contracts, or

engagements which they may make hereafter. And from and immediately after the decease of the said Anthony K. Joyce, to convey and transfer all the trust estate and effects, the widow's dower excepted, remaining in his hands, to such persons as the said Anthony K. Joyce should by will appoint, and on failure to appoint, to such as would be entitled under the intestate laws.

At the time of this conveyance the real estate belonging to Joyce, or in which he had an interest, consisted of two stores on Minor street, and the remainder in one on Market street, to take effect on the death of his aunt, Anne Rusk, provided he should be then living.

The defendant accepted the trust, satisfied the debts, collected the rents and income, and paid them to the beneficiaries.

The income, however, which originally was only $600, and never exceeded $1,000, proved utterly inadequate to supply the wants and necessities of the grantors in the maintenance and support of themselves and family.

At the solicitation, therefore, and upon the request of Joyce, the defendant from time to time advanced considerable sums in excess of the income, which were expended by the former in the support of himself and family.

In 1854 Joyce occupied a store belonging to the defendant, where he carried on the business of selling coal, and afterwards in 1858 he removed to and occupied a farm of 140 acres in Bucks county, also belonging to the defendant, on which he continued to reside with his wife and family until the year previous to his death.

For the above store and farm, the trustee charged in his account the respective rents of $250 and $800 per annum.

After the death of Anthony K. Joyce the defendant still continued to act, nominally, as trustee, no objection being made either by the widow or her children, collected the income from the estate, and paid it over to the widow, by whom it was expended in supporting herself and family until some time in 1877, when defendant surrendered all active management of the estate.

It was to the admission of the defendant as a witness, and to the charges made for the rent of the store and farm, as well as to all payments in excess of the income, that the complainants objected before the master.

They contended that these payments and charges were not available against the parties in remainder under the powers in the deed. That the trustee was limited in his payments to the life tenant to the actual income, and that many of the payments being only evidenced by checks to the order of Joyce, and by notes of the latter paid by checks, were inadmissible as claims upon the estate.

It was also alleged that there was an understanding between Joyce and the defendant that the former was to occupy the store and farm free of rent, and afterwards sell them and receive all that they realized above the original cost, and finally that the payments made to the widow were after the termination of the trust, and therefore invalid as against the children. There were besides specific objections as to certain items in the account.

The questions raised were:

1. Was the defendant competent as a witness? Found: that as to all matters relating to his own discharge he is incompetent.

2. Were the payments in excess of income authorized by the deed, and is the trustee entitled to reimbursement out of the estate? Found: that payments were authorized by deed, and trustee entitled to reimbursement.

3. Was the rent of the store and farm a proper charge and entitled to payment? Found: that rent of store and farm were proper charges and entitled to payment.

4. Is the trustee entitled to credit for the payments made to the widow since the death of Joyce? Found: that trustee is entitled to credit therefor.

5. Is the account as it stands correct?

Found: that an item of $101.97 for which no voucher was filed nor explanation given, should be disallowed; that the other item of credit appeared to be properly established, and that crediting the estate with $1,303.77, at the trustee's request, there is due to the defendant $32,645.40, with interest from October 11, 1884, which is a valid claim upon the estate and entitled to payment thereon.

The master thereupon submitted a decree in accordance with his conclusions.

Complainants' exceptions to this report were sustained by the court which ordered conveyance to complainants, of the title to the real estate held in trust by the defendant, in accordance

with the prayer of the bill, and directed the costs of the proceeding to be paid by the defendant.

A decree was entered accordingly; and the defendant took this appeal, assigning for error the decree of the court.

*H. La Barre Jayne, Arthur Biddle,* and *George W. Biddle,* for appellant.—The trustee was a competent witness.

The exception to the enabling act of 1869 is that "this act shall not apply to actions . . . where the assignor of the thing or contract may be dead;" and the point is Was Joyce the assignor within the meaning of the act?

We must remember that although the words of the act, if strained, might exclude the testimony of a party, where any assignor was deceased, yet the supreme court has not so held, but restricted them to the case of an assignor with whom the witness made the contract disputed, that is, whose estate might be affected; *viz.,* increased or diminished by the result of the action. Pattison v. Armstrong, 74 Pa. 476. See also Hostetter v. Schalk, 85 Pa. 220.

No objection should be made to the competency of a witness upon the ground of interest, unless he were directly interested in the event of the suit, or could avail himself of the verdict on any future occasion in support of his interest. Doddington v. Hudson, 1 Bing, 257.

In Nowell v. Davies, 5 Barn. & Ad. 368, an action against executors for a debt of a testator, a person entitled to an annuity under the will was held not disqualified by interest from giving evidence for the defendants. See also Paull v. Brown, 6 Esp. 34; Davies v. Davies, Moody & M. 345.

In Schnable v. Koehler, 28 Pa. 181, it was held, in an action for injury to the reversion, a tenant of the plaintiff has no such interest as excludes him from being a witness for his landlord. See also Musser v. Gardner, 66 Pa. 242.

In this deed of trust the settlor conveyed his whole estate to Joyce, reserving the right to use, in the discretion of the trustee, for his wants and necessities, not only income, but also principal, together with the right to appoint by will, and on default of a will to go to his lawful heirs.

But in Mackason's Appeal, 42 Pa. 330, 82 Am. Dec. 517, this court held that one *sui juris* cannot, as against either prior or subsequent creditors, settle his property in trust for his own life,

and to his appointees by will, or on default to his lawful heirs; although in Ashurst's Appeal, 77 Pa. 464, such a trust was obviously held good as against the settlor only.

It is clear, therefore, that the deed of Anthony K. Joyce and his wife was inoperative in regard to subsequent creditors; and it is submitted that any creditor could have forced the trustee by a bill in equity to pay any debt that Joyce should contract. Again; this trust bears no analogy in any respect to a valid spendthrift's trust.

Though it is evident that the trustee always intended to charge for his advances, it by no means follows that a previous intention not to do so, when he thought the estate was insolvent, would preclude him afterwards from altering his mind. Strawbridge's Appeal, 5 Whart. 568. See also Reck's Appeal, 78 Pa. 432.

There was no specific contract between the trustee and Joyce, but the former's claim for rent is based upon the use of the premises by the latter.

And in National Oil Ref. Co. v. Bush, 88 Pa. 335, this court held that the action of assumpsit for rent is not necessarily founded upon any specific agreement by the tenant, oral or written, to pay rent, but upon the use of the land, and will lie against the occupant although he be a trespasser, the owner having the right to waive the tort and sue in assumpsit.

In Spackman's Appeal, 16 W. N. C. 79, the niece of a decedent presented a claim for rent for the use and occupation of her property, and it was allowed; the court saying that the mere fact of the use and occupation would between strangers create a liability, and the relationship of uncle and niece would not suffice to rebut this implied presumption. See also Strawbridge's Appeal, 5 Whart. 568.

A trustee is under no special duty to voluntarily inform the remainder-men of the exact amount of his claims for advances against the estate; nor has he a special right to reimburse himself for such, by retaining portions of the income as it passes through his hands, until final settlement. And it has never been held that the trustee either forfeits or waives his legal right to reimbursement by such omissions, although it would, perhaps, be more prudent, should the trustee not have omitted to do so. Dilworth v. Sinderling, 1 Binn. 488, 2 Am. Dec. 469; Strawbridge's Appeal, 5 Whart. 568; Wister's Appeal, 86 Pa. 160.

It was also argued that the statute of limitations and the presumption of payment must prevail against the trustee. But how can this be so, when the trustee holds the title as a lien for his advances, as in Dilworth v. Sinderling or in Strawbridge's Appeal, where the lien was held to exist?

The courts hold that necessaries are not the bare needs of life; not only such as are absolutely necessary to support life, or to keep out the winter's cold, but such as are suitable to the person's degree and estate; and it must be left to the jury (or here for the master) to decide whether they were so or not, and whether furnished at reasonable prices; and they will apportion their damages accordingly. Peters v. Fleming, 6 Mees. & W. 42; Rundel v. Keeler, 7 Watts, 237, and cases cited.

In Dilworth v. Sinderling, 1 Binn. 488, 2 Am. Dec. 469, the trustee advanced £200 to the *cestuis que trust* to assist them in commencing a trade, and it was allowed by the court. See also Lowe v. Griffith, 1 Scott, 458; Coates v. Wilson, 5 Esp. 152; Hands v. Slaney, 8 T. R. 578; Rundel v. Keeler, 7 Watts, 237; Helps v. Clayton, 10 Jur. N. S. 1184; Mohney v. Evans, 51 Pa. 80; Breed v. Judd, 1 Gray, 455.

In Hill v. Arbon, 34 L. T. N. S. 125, an infant, the sole manager of a farm belonging to his father, and having some expectations, bought on credit one pair of spurs, a suit of best made kersey hose clothing, a breastplate, a set of best plated harness, etc.; held necessaries. COCKBURN, Ch. J., said: "Here, considering the position of the young man as manager of the farm, that he was nearly twenty-one and had expectations, the goods supplied were of a character which a farmer's son might reasonably require."

An infant may bind himself as apprentice by indenture, because it is for his benefit. Rex. v. Arundel, 5 Maule & S. 257; Keane v. Boycott, 2 H. Bl. 511; Cooper v. Simmons, 7 Hurlst. & N. 707.

*John G. Johnson,* for appellees.—Taylor was not competent as a witness to establish contracts with Joyce, the latter being deceased. Hostetter v. Schalk, 85 Pa. 220; Graves v. Griffin, 19 Pa. 176; Karns v. Tanner, 66 Pa. 297; Gardner v. Mc-Lallen, 79 Pa. 398; Ewing v. Ewing, 96 Pa. 381; Hunt's Appeal, 100 Pa. 590; Murray v. New York, L. & W. R. Co. 103 Pa. 37; Fross's Appeal, 105 Pa. 258; Foster v. Collner, 107 Pa. 305; Henry v. Com. 107 Pa. 361.

It is incumbent on every trustee who sets up, as against his *cestui que trust*, the notes of the latter, to do more than prove the signature thereto. He must show the actual receipt of a full consideration by the maker. It is very certain that Joyce never received the proceeds of the checks with which the notes were taken up; and there is no proof whatever that he ever received the original consideration of the notes. Wistar's Appeal, 54 Pa. 63.

The deed of trust provided for a devestiture of his title upon the decease of Joyce, and made no provision for a lien for advances. Only one mode was pointed out in which these could be charged upon the land, namely: by the exercise of the power to mortgage.

Purchasers, by the giving of such a mortgage, would be warned of the existence of a lien. By its giving, the title upon the death of Joyce would pass to the remainder-men encumbered. Had such a mortgage been executed there would have been a notification to the *cestuis que trust* of the necessity of economy, and there would have been no such ruinous accumulation of unpaid interest as is now claimed. Palmer v. Wakefield, 3 Beav. 227.

There was no advance made by Taylor upon the faith of the deed of trust. The indebtedness did not arise by way of such advances. He dealt with Joyce as he would have dealt with any other debtor, lending his money upon the security of notes and checks, and renting his places of business upon the personal credit of the lessee. He took no mortgage to show that he dealt upon the faith of the deed—which alone would establish the fact that he did so deal. On the contrary, the very fact of his taking promissory notes showed that he dealt upon personal credit. Raybold v. Raybold, 20 Pa. 308.

Upon the death of Joyce in 1868 the legal as well as the equitable title vested in the children, subject to the dower of the mother. No title thereafter remained in Taylor, and there was nothing therefore upon which the reported lien of debts could attach. Bacon's Appeal, 57 Pa. 504.

It may be that the statute of limitations is simply a bar to the recovery of a debt by the parties who set it up, and that it does not apply where there has been a pledge for an unfulfilled purpose; but the failure to sue for twenty years raises a presumption which is evidence of payment. It may be that the

pledgee of a specific thing, for a specific purpose, may legally refuse to deliver the pledge after six years; but, after twenty years, he may not do so, for then a presumption of payment has arisen.

In the well known case of Patton's Estate, 2 Pars. Sel. Eq. Cas. 103, it was held that because of such possession an assignee for benefit of creditors could be compelled to reconvey. There was no evidence in this case to rebut this salutary presumption.

Had Taylor taken a mortgage there would have been a presumption of payment after twenty years which could only have been rebutted by positive proof to the contrary or by evidence of an acknowledgment. Is he better off because he took no mortgage?

In King v. Coulter, 2 Grant Cas. 77, the supreme court held nonpayment for but fifteen years under circumstances much less conclusive than the present as to nonindebtedness to be evidence from which a jury might infer payment. The remarks of Judge WOODWARD well merit careful consideration in this connection.

OPINION BY MR. JUSTICE GREEN:

We are quite clear that the defendant was an incompetent witness as to any matters between himself and A. K. Joyce during his life, but entirely competent as to any matters between the complainants and himself after Joyce's death.

On the construction of the deed of trust we are unable to agree with the learned court below in all respects. The claims of the defendant for rent of the store and farm, it seems to us, are within the provisions of the trust. The requirements, both for shelter and occupation, are embraced within the meaning of either of the words wants or necessities and the express terms of the trust enjoined upon the trustee the positive duty of supplying the wants and necessities of Joyce and his wife during all the term of their natural lives.

That duty demanded the expenditure not only of the rents, issues, and profits of the real estate, but also the appropriation of the real estate itself, if necessary. It is true a sale or mortgage of the real estate were the methods indicated in the deed of trust for getting at its available product; and the power to mortgage was duly exercised by the trustee within the very letter of the trust and up to the full mortgage value of the property.

Of course the trustee might have sold the real estate, and thus have left the trust barren of a subject, and avoided the present litigation. But it would have involved the sacrifice of the trust property, and would have wrought distress to the principal *cestui que trust,* and much loss to the present complainants. The trustee adopted a more kindly and, as the result proved, a wiser course, and one which has proved far more advantageous to these plaintiffs. He paid the debts of Joyce, made advances of money to him, started him in the store business, and, when that proved a failure, placed him on one of his own farms where he lived a number of years supporting his large family out of the farm products to a considerable extent. In his account the trustee claims credit for rent of the store at the rate of $250 per annum and $800 for the farm. These amounts the master found to be reasonable charges; and an examination of the testimony of quite a number of witnesses other than the defendant fully sustains his finding.

The master allowed these claims but the court disallowed them, for the reason, substantially, that they were not founded upon a literal execution of the powers conferred by the deed of trust. In other words they simply represented an indebtedness due upon contracts made with the *cestui que trust* subsequently to the making of the deed, and for all such indebtedness as that the deed expressly provided there should be no liability of the trust estate.

There is much force in this view of the subject, and we are of opinion that it must be applied to some of the items for which credit is claimed. But we do not agree that it must necessarily be enforced as to the claims for rents, or rather for the price of the occupancy of the real estate in possession of which the *cestui que trust* was placed by the trustee. If the trustee had leased these premises from strangers, and had paid the rents, it could not have been denied that the payments were for necessaries. Of course Joyce and his family must have suitable shelter, and of such a character as to enable him to prosecute some kind of calling.

It is perfectly manifest that the income of the Minor street property which was but $600 for several years, and out of which had to be paid interest on a $5,500 mortgage and taxes and repairs, was not, and could not be, sufficient for the maintenance of Joyce and his family.

The remainder in the Market street property did not fall in until April, 1867, nearly eighteen years after the deed of trust was made. The rent of the Minor street store was but $600 per year until 1855 and then only rose to $750 until 1861; and it was necessarily inadequate after fixed charges were defrayed, for the support of Joyce and his family. What then was the duty of the trustee under his quite broad powers? He might have sold the real estate and had a mere trifle left after payment of the mortgage, or he might have used the rents to support the family, and neglected to pay interest and taxes and thus brought on the forced sale of the property under the mortgage; but he did not do this. He paid the interest and taxes and other expenses, and indeed went beyond those limits and made advances and took promissory notes from Joyce part of which proved a loss. The notes representing indebtedness from Joyce to Taylor are produced, and credit is claimed for them in the account; but as they are not supported by evidence showing that they were given for any indebtedness which it was within the power of Joyce to create so as to make it a charge upon the trust estate they must be rejected.

So far we agree with the learned court below. As to the claims for rent, viewing them as claims for necessaries which were furnished by the trustee, we do not perceive the necessity of a technical execution of a mortgage upon the trust estate in order to sustain them or preserve them. The trustee could not give a mortgage to himself, and it was not necessary to do so as he held the legal title to the trust estate, and that was a sufficient pledge to him in his position for all legitimate advances within the terms of the trust.

The plea of the statute of limitations is not applicable for the same reason. The question is, on what terms must the trustee now transfer the legal title? And equity will not compel him to convey it, except upon reimbursement for such of his claim as is legitimately within the powers conferred upon him by the deed. We see no objection to the allowance of the claim for over payments made to the widow after Joyce's death. It cannot be doubted that he continued to act as trustee for a number of years after the death of Joyce by the express consent of the widow and children; and the deed in terms required that the trust should continue during the lives of both Joyce and his wife. There is nothing in the evidence to call in question the

perfect good faith of the trustee in continuing in the trust after Joyce's death. His receipts during several years while he so continued to act were very considerable and are not fairly to be questioned as to their character. They appear to be within the trust and are really not challenged in their details.

It is true that the trustee was derelict in not filing his accounts and especially in not having a settlement with the widow and children after Joyce's death. But they also were derelict in not calling him to account. Instead of doing this they clearly assented to his continuance in the trust, and have had the benefit not only of his services as trustee but of the large advance in the value of the trust estate which was preserved to them by his method of administering the trust. As he will lose a considerable portion of his claim in consequence of his delay in the settlement he is the severest sufferer from that cause.

Without elaborating more fully upon the details of the controversy we think it sufficient to say that the account as adjusted by the master should be corrected by striking out the credits for the two checks for $1,500 and $300 dated the 3d and 21st of March, 1854, paid to Joyce to start him in a store, and certain notes a list of which appears in the printed argument for appellees at page 6, together with all sums of interest charged on all of said items, and confirming the report as to the remainder of the account as found by the master.

Decree reversed and record remitted with directions to correct the account in accordance with the foregoing opinion, the costs of this appeal to be paid by the appellees.